UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
1-800-FLOWERS.COM, INC.,

                          Plaintiff,                **MEMORANDUM & ORDER**

        -against-                             **11 CV 1038 (DRH)(WDW)**

FLOWERS LLC and HUR GULER,

                          Defendants.
-----------------------------------------------------X

APPEARANCES:

For the Plaintiff:
GALLAGER, WALKER, BIANCO & PLASTARAS
98 Willis Avenue
Mineola, New York 11502
By: Thomas E. Plastaras

KILPATRICK TOWNSEND & STOCKTON LLP
Suite 2800, 1100 Peachtree Street
Atlanta, Georgia 30309-4528
By: Judith A. Powell, Esq.

For the Defendants:
O'CONNELL LAW OFFICE
1026A Massachusetts Avenue,
Arlington, Massachusetts 02476
By: Thomas P. O'Connell, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff, 1-800-Flowers.com, Inc., commenced this action against defendants, Flowers

LLC and Hur Guler (together, "defendants"), alleging violations of the Lanham Act, 15 U.S.C. §

1051, N.Y. Gen. Bus. L. § 349, and unfair competition under New York state common law.

Defendants now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) as to both

defendants for lack personal jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(6) as to defendant

Guler for failure to state a claim.  Alternatively, defendants move to transfer this action under 28

U.S.C. § 1404(a) to the United States District Court for the District of Massachusetts. For the reasons that follow, defendants' motion is denied in its entirety.

## BACKGROUND

### I. Plaintiff's Trademarks and the Alleged Conduct

Plaintiff, a floral product and gift delivery service, is a Delaware corporation with its principal place of business located in Carle Place, New York. (Compl. ¶ 2.) Since 1994, plaintiff has made its services available to individual consumers over the Internet. (*Id.* ¶¶ 7-8.) Customers can go online and place orders for delivery of flowers and other gifts through plaintiff's website, which can be reached through a number of web addresses, including 800flowers.com, 1800flowers.com, and 1-800-flowers.com. (*Id.* ¶ 8.) Plaintiff conducts this business under a variety of brand names, which have in common the terms "800," "Flowers," and "Florist" (hereinafter "trademarks"), and which are all registered with the United States Patent and Trademark Office. (*Id.* ¶ 9.)

The complaint alleges that defendants have infringed on these trademarks by improperly embedding plaintiff's trademark names as "keywords" or "tags" within defendants' own websites and using such trademarks as keywords to trigger online advertisements for defendants' websites. (Compl. ¶¶ 17-19.) The alleged purpose for this activity is to cause web users who search for plaintiff's trademarks to visit defendants' websites instead. (*Id.*)

### II. Flowers LLC

On June 23, 2008, defendant Hur Guler ("Guler") formed "Flowers LLC," of which he is also the sole owner and member, as well as the General Manager. (Guler Dep. 26-27, FTD

"Sending Only" Florist Agreement at 1, Pl.'s Ex. C.)  Guler initially ran the company as a store-front flower shop but quickly expanded the "send-only" component of the business, significantly reducing its reliance on walk-in sales.  This transition was formalized in September 2008 when Flowers LLC entered into a "'Sending Only' Florist Agreement" with FTD.  (Guler Dep. 31:1-32:14; FTD "Sending Only" Florist Agreement, Pl.'s Ex. C.)  Following this agreement, Flowers LLC ceased operations as a store-front flower shop and stopped making its own floral arrangements and deliveries.  Instead, the company transitioned its entire operation to taking orders, either online or by telephone, and facilitating the delivery of these orders by other florists. (Guler Dep. 32:7-14; Christman[1] Dep. 35-36, 39.)

Most of Flowers LLC's current business is conducted through its two websites: ftdfloristonline.com/flowers, which is hosted by FTD (Guler Dep. 42-43), and flowers.ms, which mirrors the content on this FTD page (together, "defendants' websites"), (Christman Dep. 36:15-17; Guler Dep. 42:7-24).  Flowers LLC also owns and operates OneYellow.com, an online directory and advertising website. (Christman Dep. 36:22-37:17.)

### III.    Facts Relevant to Personal Jurisdiction

Customers from anywhere in the world, including New York, can visit the defendants' websites to place an order, pay for that order, and have that order delivered to any address within the "FTD florist network," which includes addresses in New York.  (Christman Dep. 46-47.) Flowers LLC receives revenue from orders placed with them by New York residents and from orders placed with them from elsewhere which are to be delivered to New York. (*Id*. at 48:10-18.)  In an effort to demonstrate that Flowers LLC does indeed take orders from, and deliver orders to, New York, one of the plaintiff's employees, Michael Sparling, successfully placed an

---

[1] Charles Christman is the Manager of Operations for Flowers, LLC. (Christman Dep. 7.)

order through defendants' websites on May 11, 2011, using a New York billing address and a New York delivery address. (Screenshot of Sparling Transaction, Pl.'s Ex. I; Sparling Decl. ¶ 6.)

Flowers LLC's sole place of business and all of its employees are located in Cambridge, Massachusetts. (Noviello Aff. ¶ 3.) Flowers LLC does not employ any salespeople or other employees in New York, nor does it have an office or maintain a physical presence in New York, and all of its state tax obligations are in Massachusetts. (*Id*. ¶¶ 6-7, 10.) Additionally, any flowers purchased through the defendants' websites for delivery in New York are delivered by other FTD-member, New York-based florists. (*Id*. ¶¶ 12-13.) All records of sales transactions and all marketing documents are generated and maintained in Flowers LLC's Cambridge office. (*Id*. ¶¶ 5, 8.) Guler personally asserts that he does not own real estate or personal property within New York, does not pay taxes there, and has not set foot in the state since 2002. (Guler Aff. ¶¶ 3-5.)

Nonetheless, Flowers LLC receives a substantial portion of its revenue from sales to New York residents or for delivery to New York. Flowers LLC's gross revenue from all national and international sales from January 1, 2008 through August 1, 2011 was $26,940,432.51, from 411,499 separate sales transactions. (Higginson Decl. ¶ 3; *see also* Higginson Decl. Ex. 1.) Of that total, $2,553,276, or 37,863 separate transactions, came from sales made to New York residents or for delivery within New York. (Higginson Decl. ¶ 4.) These New York numbers equate to 9.5% of all sales revenue and 9.2% of all sales transactions during the specified time period. By comparison, gross revenue from sales made to Massachusetts residents or for delivery to Massachusetts over the same time period, *viz.* $1,008,947.74 from 15,685 sales transactions, was less than half of that for New York.[2] (Faris Decl. ¶ 17.) From January 1, 2011 to July 31, 2011, Flowers LLC's total sales revenue was $2,534,192.49, of which $166,785.84,

---

[2] The Massachusetts-related sales accounted for only 3.8 percent of all sales revenue.

or 6.23 percent, was New York-related. (Sales Figures, Pl.'s Ex. N; Regional Sales Figures, Pl.'s Ex. M.)  During that same time period, defendants' websites received 74,875 "visits" originating from within New York.  (Screenshot of Google AdWords Site Visit Detail, Pl.'s Ex. L.)

Flowers LLC advertises nationwide, through both online and print directories, and through Google Adwords. (Christman Dep. 73-74.) These advertisements regularly reach consumers in New York.  (Christman Dep. 74:21-75:9.)  In fact, the company has entered into nationwide contracts which place Flowers LLC among local directory listings in print and online yellow pages in New York.  (Defs.' Resp. to Pl.'s Interrog. at No. 4, Pl.'s Ex. B.)  Additionally, upon searching oneyellow.com—which, as mentioned above, is owned and operated by the defendants—for "Florists" in "New York," Flowers LLC is featured prominently above listings for local New York florists, and takes up the entirety of the webpage that is visible without scrolling. (Screenshot of oneyellow.com Search Results, Pl.'s Ex. K; Christman Dep. 55.)

Flowers LLC also maintains steady communication with individuals in New York.  In addition to the automatically generated emails sent to New York-based customer to confirm their purchases, Flowers LLC also sends periodic marketing e-mails to past customers located in New York who have previously agreed to receive such emails. (Christman Dep. 68-69.)

Guler is, and has been since the formation of the firm, the sole owner of Flowers LLC. He is also the individual who controls the content of the defendants' websites, in which the trademarked keywords are allegedly embedded. (Guler Dep. 47-48.)  Further, he remains the only person at Flowers LLC with access to the business's Google AdWords account, through which much of the alleged improper use of plaintiff's trademarks as keywords was made, and deals personally with Google with respect to selection and purchase of keyword advertising. (Guler Dep.15, 42-43, 48-50, 70-71; Christman Dep. 91, 97.)  Although other employees of

Flowers LLC help him at times with the selection of online advertising keywords, he reserves the authority to veto the use of any keyword with which he disagrees. (Guler Dep. 49-50, 70-71; *see also* Christman Dep. 91.)

## DISCUSSION

**I.  DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

### a.  Standard of Review under Rule 12(b)(2)

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing jurisdiction over the defendant.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  Here, defendants' motion was made after "the parties ha[d] conducted extensive discovery regarding the defendant[s'] contacts with the forum state, but no evidentiary hearing has been held."  *Id* at 567.  Accordingly, "plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant. A plaintiff can make this showing through its own affidavits and supporting materials, containing a good faith averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 399 F.Supp.2d 325, 330 (S.D.N.Y. 2005) (internal alterations and citations omitted)(citing *Distefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) and *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  Further, "[w]here the [jurisdictional] issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker*, 261 F.3d at 208 (quoting *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). First, the Court applies the forum state's long arm statute. Second, if the statute permits the exercise of personal jurisdiction, the Court must then determine if such an exercise comports with due process. *Id.* at 163-64.

### b. New York's Long Arm Statute

"Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302." *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 301 (E.D.N.Y. 2009). Plaintiff maintains the defendants are subject to personal jurisdiction under two subsections of New York's long-arm statute: N.Y. C.P.L.R. §§ 302(a)(1) and 302(a)(3). (*See* Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl's Br.") at 9.) Those subsections provide for the "exercise [of] personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . .(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . (3) commits a tortious act without the state causing injury to person or property within the state." N.Y. C.P.L.R. § 302(a).[3]

### i. *Personal Jurisdiction over Flowers LLC Pursuant to section 302(a)(1).*

As noted above, section 302(a)(1) relates to a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). With regard to the transaction of business prong, subsection 302(a)(1) is a "single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d

---

[3] Subsection (a)(3) contains further conditions discussed in more detail below.

Cir. 2005). It is also well established that a party need not be physically present in the state at the time of service in order for the court to obtain personal jurisdiction, "[s]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 466, 522 N.E.2d 40 (1988); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010)(finding personal jurisdiction based on "the single act of an out-of-state defendant employee shipping an item into New York, combined with his employer's extensive business activity involving New York"); *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140 (2006), *cert denied* 549 U.S. 1095 (2006) ("[T]he growth of national markets for commercial trade, as well as technological advances in communication, enable a party to transact enormous volumes of business within the state without physically entering it.").

Additionally, "where there is a showing that business was transacted, there must be a 'substantial nexus' between the business and the cause of action." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005)(citing and quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59-60 (2d Cir. 1985)).

In cases where the alleged transactions were executed over the Internet with defendants located outside of the forum state, the Second Circuit has considered the "interactive" nature of this online activity to be "useful" [4] in determining the applicability of section 302(a)(1), *i.e.* whether, through this activity a defendant has "purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (citing *Cutco Indus. v.*

---

[4] The Second Circuit is careful to note that this interactivity consideration "does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines*, 490 F.3d at 252 (citation omitted). "Instead, 'traditional statutory and constitutional principles remain the touchstone of the inquiry.'" *Id.*

*Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)); This framework places the online activity on a "spectrum" or "sliding scale" of interactivity as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 251 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)); *see also Vandermark v. Jotomo Corp.*, 42 A.D.3d 931, 932 (4th Dep't 2007)(holding that website activity may confer personal jurisdiction where it "has significant commercial elements, which typically are found to constitute the transaction of business.").

The record before the Court demonstrates that thousands of sales occurred through Flowers LLC's website(s) either with consumers in New York, or for deliver to New York addresses, or both. In fact, these New York-related sales accounted for millions of dollars in revenue for the company. It cannot be disputed here, nor do defendants appear to do so, that their websites are highly interactive. As is illustrated by the test purchase made by one of plaintiff's employees, a consumer located in New York can visit defendants' website(s), select flower arrangements or other gifts, make a direct online payment to Flowers LLC, and provide an address in New York where the items will be delivered. This user experience is not only interactive, but purely commercial in nature.

Defendants nevertheless argue that Flowers LLC "does not direct its activities to New York or any other particular place." (Defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply") at 5.) Specifically, defendants note that the company has no employees or physical presence within the state, its websites, including oneyellow.com, are "not location specific," and "its advertising and marketing contracts are nationwide, [] none are directed particularly to the [s]tate of New York." (*Id.* at 6.) Although defendants appear to advance this argument in the context of their due process rights, it is nevertheless appropriate to address the issue here within the discussion of section 302(a)(1). Common to the issues of transacting business under New York's long arm statute and the constitutional exercise of personal jurisdiction is the question of whether a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *See Best Van Lines*, 490 F.3d at 242, 246.

Defendants argue this point by first quoting from the following passage in *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980):

> When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by . . . severing its connection with the State.

*Id.* at 298 (internal quotes and citation omitted).

Defendants then suggest that because Flowers LLC's services are technically available to any Internet user, no matter where they are located, it cannot actually "sever its connection" with a particular jurisdiction, including New York. (Defs.' Reply at 6.) In essence, the technology involved dictates that if Flowers LLC "severs" its connection with New York, then it must also necessarily and simultaneously sever its connections with every other jurisdiction – an impractical solution. In making this argument, however, defendants misapply the case law

pertaining to personal jurisdiction where Internet activity is involved.  This misapplication offers a vivid illustration of why, as mentioned above, the level and nature of interactivity of a defendant's online resource is such a "useful" factor in determining whether that defendant had availed itself of the privileges and benefits of operating within a particular jurisdiction.

In the present case, we are not confronted with "the mere posting of information on a passive web site." *See Best Van Lines*, 490 F.3d at 253.  In that case, despite the fact that this online content may be available to users within a certain market or jurisdiction, the availability of that content, alone, cannot serve as the basis for personal jurisdiction under section 302(a)(1). *Id.*; *see also McBee v. Delica Co., Ltd.*, 417 F.3d 107, 124 (1st Cir. 2005)("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.")). The soundness of exercising such judicial restraint is evident in defendants' argument, *i.e.* how can Flowers LLC be said to have availed itself of the privileges of a certain jurisdiction simply because an Internet user from that jurisdiction utilizes an online resource that is equally available to users everywhere?  Defendants' argument, however, breaks down as one moves along the "sliding scale of interactivity." *See Best Van Lines*, 490 F.3d at 253(referring to the term as it was first used in *Zippo*, 952 F. Supp. 1119.  "[W]hether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)(applying this analysis to section 302(a)(1)).

Flowers LLC's website involves far more than the passive posting of information.  As noted above, New York users can visit the websites, select flower arrangements and other gifts, make a direct online payment to Flowers LLC, and provide an address in New York for delivery.

This type of activity falls closer to "the other end of the spectrum . . . in which the defendant clearly does business over the internet." *Id.* While Flowers LLC may not be in a position to "sever" its contact with New York by preventing New York users from visiting its site, it is presumably in a position to refuse to accept payments from users with a New York billing address, and similarly able to refuse to arrange for shipments into the state. Flowers LLC did not choose to restrict itself in that way. Instead it provides its services in thousands of New York related transactions and accepted millions of dollars in revenue in exchange for these services. This activity therefore rises to the level of transacting business for purposes of section 302(a)(1).

In reaching the above conclusion, the Court has also considered defendants' further argument that the exercise of personal jurisdiction is not appropriate in this case because Flowers LLC does not actually "ship" its products into New York. (Memorandum in Support of Defendants' Motion to Dismiss ("Defs.' Br.") at 14.) Defendants assert that this fact is crucial because where the Second Circuit in *Chloe*, 616 F.3d 158, found personal jurisdiction, the defendant had made direct shipments of the subject goods into the state. Here, Flowers LLC, while sitting in Massachusetts, merely takes the order and arranges for another florist, already located in New York, to make the final delivery. This argument fails for a number of reasons.

First, the *Chloe* court operated from the finding that the defendant "either physically shipped *or was responsible for* the shipment of" the subject goods in to New York. *Chloe*, 616 F.3d at 165 (emphasis added). Second, the case law pertaining to section 302(a)(1) does not dictate such a narrow consideration of the relevant factors. Rather, "precedents establish that it is the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 880 N.E.2d 22 (N.Y. 2007); *see also Chloe*, 616 F.3d at 164 (considering the "totality of Defendants' contacts with the forum state"). Whether Flowers

LLC's employees actually delivered the orders to New York addresses is of little consequence. The company took orders from customers in New York and/or effectuated the delivery of those orders to addresses in New York. Furthermore, payment for these New York related deliveries was made directly to Flowers LLC via the website. As discussed earlier, the volume of these New York-related sales was also substantial, involving thousands of order and amounting to millions of dollars in revenue. Moreover, Flowers LLC continued to communicate with its New York based customers on a regular basis through the use of marketing emails. The substantial online business activity with, and/or directed at New York consumers demonstrates that Flowers LLC availed itself of the benefits and protections of the New York market and, as held avove, transacted business under §302(a)(1), regardless of whether its employees or agents actually "shipped" the goods into New York.

Finally, there is a "sufficient nexus" between the subject transactions and the conduct alleged to have caused plaintiff's injuries. *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006). At a minimum, these transactions occurred on the websites where, plaintiff alleges, the subject trademarks are embedded as keywords. The Court notes that it does not matter for present purposes that the plaintiff has not shown that any of these transactions were conducted by users who originally searched using one of plaintiff's trademarks. To satisfy the nexus requirement, a defendant's contacts with the state need only "relate to," *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002), or have some "articulable nexus," *McGowan v. Smith*, 52 N.Y.2d 268, 419 N.E.2d 321, 321 (N.Y. 1981), with the asserted claim, *see also Sole Resort*, at 104 (No nexus exists where "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York.").

Plaintiff has therefore met its burden to set forth evidence that personal jurisdiction exists over Flowers LLC pursuant to §302(a)(1). Having made this determination, the Court need not reach plaintiff's alternate argument that personal jurisdiction also exists over the company pursuant to §302(a)(3).

### ii. *Personal Jurisdiction over Guler Pursuant to C.P.L.R § 302(a)(1).*

As for defendant Guler, New York does not recognize the "fiduciary shield doctrine" that would otherwise immunize individuals from the exercise of personal jurisdiction based solely on dealings in the forum state in the capacity as a corporate officer. *Kreutter v. McFadden Oil Corp.*, 71 N.Y. 2d 460,468-72, 522 N.E.2d 40 (1988). Accordingly, "section 302(a) . . . confers jurisdiction over individual corporate officers who supervise and control an infringing activity." *Chloe*, 616 F.3d at 164 (citing). As mentioned above, the basis for plaintiff's complaint is that defendants have infringed plaintiff's trademarks by using those trademarks "on, and as keyword[] [advertising] for, defendants' websites. (Compl. ¶ 15.) No advertisement for Flowers LLC is published without Guler's consent, he is the only person at Flowers LLC who has access to the business's Google AdWords account, and he deals personally with Google with respect to selection and purchase of keyword advertising. (Guler Dep. 70:1-24, 50:7-17; Christman Dep. Tr. 91:4-19, 97:97:17-22.) As there is evidence that Guler, in his capacity as the manager of Flowers LLC, supervised and controlled the alleged infringement activity, and as the Court has already determined that Flowers LLC is subject to personal jurisdiction under CPLR § 302(a)(1), personal jurisdiction likewise exists under that statute as to defendant Guler.

### c. Due Process Analysis

Having determined that New York's long-arm statute permits personal jurisdiction over both defendants, the Court must determine next whether the exercise of such jurisdiction comports with the Due Process Clause of the United States Constitution.

Due process requires that, in order for a court to subject a non-domiciliary defendant to jurisdiction, that the defendant have sufficient contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *McIntyre Machinery, LTD., v. Nicastro*, --- U.S. ---, 131 S.Ct. 2780, 2787 (2011)(plurality opinion) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "For purposes of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Chloe*, 616 F.3d at 164. Specific jurisdiction, which is at issue here, exists when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and "submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *McIntyre Machinery*, 131 S.Ct. at 2788.

#### i. Defendants Contacts with New York

"In determining the strength of the contacts under both Section 302(a)(1) and the Due Process Clause, we look to the totality of [d]efendants' contacts with the forum state." *Chloe*, 616 F.3d at 164. Although, it has been noted that Flowers LLC does not operate its business, base its employees, or hold meetings in the state, it nevertheless maintains substantial contacts with the state. Not the least of these contacts are the thousands of sales either with New York residents, or for delivery to New York residents. *Accord id.* at 166-67 (finding that 52 web

transaction resulting in the shipment of goods to New York equated to "extensive business contacts with New York customers").  Further, as discussed above, Flowers LLC's contacts with New York were sufficiently related to plaintiff's claims. *See Helicopteros*, 466 U.S. at 414 (requiring that a defendant's contacts with the forum state relate to the alleged injury for purposes of due process).

Furthermore, it is reasonable to impute these same contacts between Flowers LLC and New York to Guler individually.  The facts here are directly analogous to a similar situation in *Chloe*, where the acts of the defendant company were imputed to the company's principal for purposes of personal jurisdiction.  There, the "principal[] and operator[]" of the defendant corporation (1) shared in both the profits and the "decision-making and execution" of the transactions at issue. *Chloe*, 616 F.3d at 168-69.  In this action, Guler is the sole owner and general manager of Flowers LLC; it is he who hires its employees and pays their salaries; he alone has the authority to enter into contracts on behalf of Flowers LLC; he retains sole control over the selection and use of keywords—whether they appear on defendants' own website, or are used in online advertising—; and he alone receives the distribution of profits from the business. (Guler Dep. Tr. at 15:18-24, 11:8-10, 29:7-12, 35:5-13, 58:10-12.)

### ii.  Reasonableness

Finally, plaintiff must also demonstrate the "reasonableness" of the exercise of jurisdiction such that it would not offend "traditional notions of fair play and substantial justice." *See Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987)(quoting *International Shoe*, 326 U.S., at 316).  This inquiry requires weighing the following factors: (1) the burden on the defendant; (2) the interests of the forum State in adjudicating the controversy; (3) the plaintiff's interest in obtaining relief; (4) "the interstate judicial system's interest in

obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 113. If, upon a balancing of the above factors, the Court determines that an exercise of personal jurisdiction over the defendant would be unreasonable, the Court must dismiss the complaint.

As to the first factor, clearly some burden exists on defendants from having to adjudicate the case here. Defendants argue that, because plaintiff "is a multinational corporation with annual revenue reported to approach one billion dollars" and Flowers LLC "is a small, one-office florist in Cambridge, Massachusetts" "forcing defendants to litigate in [New York] would impose severe hardship on them." (Defs.' Br. at 14.) The Court notes, however, that Flowers LLC grossed nearly $27 million from January 1, 2008 through August 1, 2011. (Higginson Decl. ¶ 3; Higginson Decl. Ex. 1.) Moreover, "[a]bsent compelling considerations, a defendant who has purposefully derived commercial benefit from his affiliations in a forum may not defeat jurisdiction there simply because of his adversary's greater wealth." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 n.25, (1985)(internal citation omitted).

Regarding the second factor, New York, as with any forum state, has a "manifest interest in providing effective means of redress for its residents." *Chloe*, 616 F.3d 173 (quoting *Burger King*, 471 U.S. at 483). Plaintiff too has an interest, for purposes of the third factor, in adjudicating the matter in New York, the state in which it holds its principal place of business. The fourth and fifth factors appear to favor neither party.

Upon balancing these factors, it is clear that this Court's exercise of jurisdiction over defendants would comport with "traditional notions of fair play and substantial justice," and would not violated defendants' due process rights. Accordingly, as the exercise of personal

jurisdiction is likewise appropriate under New York's long arm statute, as discussed *supra*, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is denied.

## II.   DEFENDANTS' MOTION TO TRANSFER VENUE

### a.  The Legal Standard

A federal district court may transfer a civil action "to any other district or division where it might have been brought" when transfer will serve "the convenience of parties and witnesses" or furthers "the interest of justice."  28 U.S.C. § 1404(a).  "The goal of Section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvienience and expense." *Schwartz v. Marriot Hotel Services, Inc.*, 186 F.Supp.2d 245, 248 (E.D.N.Y. 2002) (internal quotes and cites removed).  "[M]otions to transfer are within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  *Id.* at 248 (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).

On a motion to transfer, the movant bears the burden of establishing that the motion should be granted by clear and convincing evidence.  *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).  The movant must show (1) that the action could have been brought in the proposed transferee district (here, Massachussets), and (2) that transferring would serve the convenience of parties and witnesses and be in the interests of justice. *See* 28 U.S.C. § 1404(a); *Calabrese v. Teoco Corp.*, 637 F. Supp. 2d 160, 163 (E.D.N.Y. 2009).

As to the first query, Flowers LLC's sole place of business is located in Cambridge, Massachusetts, and Guler is a citizen of that state. (Noviello Aff. at 1 ¶ 3; Defs.' Resp. to Pl.'s Interrog., at 10.) Accordingly, both defendants are subject to general jurisdiction in Massachusetts. Thus, plaintiff could have brought this action against both defendants in the district of Massachusetts.

The courts enjoy broad discretion in evaluating the second query, and consider the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (internal quotes and citation omitted).

### a. Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally entitled to "great weight," *Helfant Louisiana & Southern Life Ins. Co.*, 82 F.R.D. 53, 57 (E.D.N.Y. 1979), especially where the forum is in the plaintiff's home state, *Delta Air Lines, Inc. v. Ass'n of Flight Attendants, CWA*, 720 F.Supp.2d 213, 218 (E.D.N.Y. 2010). However, "where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same great weight and in fact is given reduced significance." *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990 (E.D.N.Y. 1991).

Given the evidence of defendants' significant volume of business in New York conducted through the allegedly infringing websites, it is apparent that this district—plaintiff's local forum—has a significant connection with the subject matter of this action.

### b. Convenience of the Witnesses

"The convenience of parties and witnesses is generally the most important factor in a court's determination of whether to grant a motion for transfer." *Merkur v. Wyndham Int'l, Inc.*, 2001 U.S. Dist. LEXIS 4642 at *9 (E.D.N.Y. Mar. 30, 2001)(citing cases). Courts consider the convenience of witnesses both to minimize the burden they must face, and to secure their live testimony at trial. *McKinley v. Cont'l Airlines*, 2007 U.S. Dist. LEXIS 63881 at *6 (E.D.N.Y. Aug. 29, 2007).

In intellectual property infringement cases, the key witnesses are generally those involved in the "design, production, and sale" of the allegedly infringing materials. *See AEC One Stop Group v. CD Listening Bar, Inc.*, 326 F.Supp.2d 525, 529 (S.D.N.Y. 2004). Further, where a party seeks to transfer venue based on the convenience of witnesses that party must "clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Marcotte v. Joyce Beverages, Inc.*, 1990 WL 52123, at *2 (S.D.N.Y. Apr., 17, 1990) (emphasis added) (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978)). Although defendants state that "the key witnesses will be those who designed the website and those who made decisions concerning the design, content, and marketing of the website who in this case are in Massachusetts," (Defs.' Br. at 16), they fail to specify even one of these key witnesses.[5]

---

[5] Defendants do, however, provide the names of 11 non-party witnesses over whom they do not exert any control. (See Def.s' Rep. to Pl.'s Interrog. at No. 9.) None of these were identified by defendants as, nor do they appear based on their titles to be, "key" witnesses.

### c. Locus of Operative Facts, Location of Relevant Documents, and Ease of Access to Proof

In infringement cases the operative facts "usually concern the design, development and production" of the accused content. *Kwik Goal, Ltd. v. Youth Sports Publishing, Inc.*, 2006 WL 1517598, at *3 (S.D.N.Y. 2006) (quoting *AEC One Stop*, 326 F.Supp.2d at 530). Here, all decisions regarding the design and marketing of defendants' services, including the selection of keyword advertising for defendants' websites, took place in Massachusetts. (Noviello Aff. at 1 ¶ 3, 2 ¶ 5.) Therefore, Massachusetts is the locus of operative fact.

Nevertheless, this is will likely be a document-heavy case. Notwithstanding that all of the documents pertaining to Flowers LLC's marketing and keyword advertising are located in Massachusetts, (Noviello Aff. ¶¶ 5, 8), most of these documents could be "easily mailed or carried from one venue to the other." *Schwartz*, 186 F.Supp.2d at 250. Defendants argue that Flowers LLC's "stand-alone, single server [is] impossible to transfer to the Eastern District of New York without entirely shutting down [Flowers LLC's] business operations and taking a complete loss or corruption of critical business data." (Defs.' Resp. to Pl.'s Interrog., No. 10.) This argument is unpersuasive. Adjudicating this case does not require that Flowers LLC's server be physically present in this district; rather, it is certain documents and files stored on the server that will be required. Those documents, to the extent that they are discoverable, can be copied and transferred to the appropriate destination in this district.

### d. The Convenience of the Parties

Transfer should, on balance, be more convenient for both parties; that is, "a transfer of venue should not merely shift the burden of inconvenience from one party to another." *Schwartz*, F.Supp.2d at 250. Here, plaintiff is a corporation with its principal place of business in New York (Compl. at 1 ¶ 2); defendants are both located in Massachusetts, (Noviello Aff. at 1

¶ 3; Defs.' Resp. to Pl.'s Interrog., at 10).  Thus, if this Court transfers this action to the District

of Massachusetts, the inconvenience will merely shift from defendants to plaintiff.

### e.   The Availability of Process to Compel Unwilling Witnesses

Defendants have identified eleven potential non-party witnesses who, presumably, would

be inconvenienced if they were required to travel to New York.  (Defs.' Resp. to Pl.'s Interrog.,

at 12-14.)  However, "the defendants fail to provide any evidence that any of these persons is

unwilling to testify on the defendants' behalf in a trial in New York." *See Schwartz*, 186

F.Supp.2d at 250; *see also Soto v. Bey Transp. Co.*, 1997 U.S. Dist. LEXIS 10473 (S.D.N.Y.

July 18, 1997) (holding that where a defendant fails to present evidence demonstrating that its

witnesses would be unwilling to testify, the ability to compel the attendance of witnesses is not a

factor in the court's analysis).

### f.   The Relative Means of the Parties

"Where an apparent disparity exists between the parties…the court should consider the

relative means of the parties." *Schwartz*, 186 F.Supp.2d at 251 (citing *Pall Corp. v. PTI Techs.,

Inc.*, 992 F.Supp. 196, 200 (E.D.N.Y. 1998).  As noted above plaintiff is a large, multinational

corporation, while Flowers LLC is much smaller, with a single office in Cambridge,

Massachusetts.  (Noviello Aff. at 1 ¶ 3.)  However, "the argument [for] transfer is mitigated by

the fact that the [transferee venue]" is not unmanageably far from this district. *See Schwartz*, 186

F.Supp.2d at 251.  "Thus, any increased cost the [defendant] might face by having to litigate the

case in [New York] is minimal." *Id*.  Accordingly, this factor weighs only slightly in favor of

transfer.

Upon consideration of the above factors, and for the above-stated reasons, the Court finds

that the defendants have not met their burden of demonstrating that transfer to the District of

Massachusetts would serve the convenience of parties and witnesses and be in the interests of justice. Accordingly, defendants' motion to transfer venue to the District of Massachusetts is denied.

## II. DEFENDANTS' MOTION TO DISMISS THE CLAIMS AGAINST GULER FOR FAILURE TO STATE A CLAIM

### a. Standard of Review under Rule 12(b)(6)

In contrast to the inquiry into personal jurisdiction, and the proposed transfer of venue, the Court's review of defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is limited to the pleadings. Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (*quoting and citing Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

### b. Analysis

Defendants argue that plaintiff has not stated a plausible set of facts to hold Guler personally liable for the alleged infringement activity because the pleading merely "lumps" Guler in with Flowers LLC without attributing specific conduct to Guler himself. (Ds.' Br. at 6 ("The reality is that the Plaintiff complains of acts allegedly performed only by Defendant Flowers.")  Defendants further argue that the allegations "ignore the legal entity and the protection that it should properly afford," *i.e.* "there is no basis in the Complaint that could plausibly support passing through or around the legal entity of Flowers, LLC to establish Guler's personal liability, whether based on an alter ego theory, piercing the corporate veil, …" (*Id.* at 7.)

Nevertheless, "if an individual actively and knowingly caused the trademark infringement, he is personally responsible. Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *Mattel, Inc. v. Internet Dimensions Inc.*, 2000 U.S. Dist. LEXIS 9747 at *16 (S.D.N.Y. July 13, 2000)(quoting *Babbit Electronics, Inc. v. Dunascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)); *see also Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 354 (E.D.N.Y. 1998) ("While a corporate officer is not necessarily individually liable for torts committed on behalf of the corporation, personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind [the defendant corporation's] infringement.")

The pleading alleges that the defendants, which is defined in the caption to refer collectively to both Flowers LLC *and* Guler, used the trademarks "on, and as keywords for, Defendants' websites." (Compl. ¶ 15.)  The complaint further articulate the specific acts involved in this allegedly infringing activity, including that defendants "embedded" and/or "stuff[ed]" the

trademarks in the websites, and "intentionally using multiple variations" of these trademarks "to trigger online advertising for Defendant's websites." (*Id.* ¶¶ 18-19.) Attributing these acts in equal force to both defendants, as plaintiff's do in the complaint, there are more than ample facts in the pleading to state a claim that Guler was the "moving, active conscious force behind the infringement." Plaintiff has therefore stated a plausible claim for relief against defendant Guler, and defendants' motion to dismiss the claims against Guler under Fed. R. Civ. P. 12(b)(6) must be denied.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(2) and 12(b)(6) and to transfer venue is denied in its entirety. As portions of the parties' motion papers were filed under seal, access to this Memorandum and Order will be initially restricted to the parties only. The Court will lift this restriction and make the opinion available to the public within 21 days of the entry of this Order, unless the parties show good cause in writing before that date why the Court should not do so. Any showing must overcome the presumption that court documents are generally open to the public.

SO ORDERED.


Dated: Central Islip, New York
        August 17, 2012


                                        _____/s_____
                                        Denis R. Hurley
                                        United States District Court